UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEITH FELGEMACHER,

        Plaintiff,

    v.

JUDGE MARY G. CARNEY et al.,

        Defendants.

---

25-CV-128-LJV
DECISION & ORDER

On February 10, 2025, the pro se plaintiff, Keith Felgemacher, commenced this action under 42 U.S.C. § 1983. Docket Item 1. Felgemacher says that the defendants—Erie County Family Court Judge Mary G. Carney, Erie County Family Court Referee Donna M. Castiglione, and the New York State Unified Court System—violated his Fourteenth Amendment rights during custody proceedings. *See id.*

On February 28, 2025, the defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), (2), and (6) for, respectively, lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. Docket Item 2. After Felgemacher responded, Docket Item 6, the defendants replied, Docket Item 7.

For the reasons that follow, the Court grants the defendants' motion to dismiss.[1]

---

[1] Felgemacher also moved for electronic filing privileges in this case. Docket Item 5. Because this Court grants the defendants' motion to dismiss, it denies Felgemacher's motion for electronic filing privileges without prejudice as moot.

## BACKGROUND[2]

In 2024, Felgemacher "was a party in a custody case" in Erie County Family Court.  Docket Item 1 at ¶ 11.  Judge Carney presided over the case, but certain proceedings were delegated to Castiglione in her role as the court referee.  *Id*.  The "case involved critical issues related to [Felgemacher's] parental rights and his relationship with his child."  *Id*. at ¶ 12.

Throughout the case, many of the hearings were "conducted . . . virtually using Microsoft Teams software" according to the New York State Unified Court System's protocols.  *Id*. at ¶ 13.  Felgemacher was represented by counsel during several of these proceedings, but he "consistently expressed his desire and need to personally participate in these proceedings to ensure [that] his voice was heard."  *Id*. at ¶ 14.

Consistent with this desire, Felgemacher "attempted to access the virtual hearings" on "at least three occasions."  *Id*. at ¶ 15.  Although he "logged into the platform and was ready to participate" in each hearing, he either was "kept in the virtual 'waiting room'" for most of the hearing or was "excluded entirely without explanation."  *Id*.

Felgemacher "repeatedly" told his attorney that he was concerned about his inability to participate, but his attorney was "unable to ensure [his] access to the

---

[2] The following facts are taken from the complaint, Docket Item 1.  On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  Moreover, because Felgemacher is proceeding pro se, this Court "construe[s his] complaint liberally."  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Throughout this order, page numbers in docket citations refer to ECF pagination.

proceedings." *Id*. at ¶ 17.  Felgemacher "also communicated [his] concerns directly to the Family Court, including [once] during a pretrial hearing." *Id*. at ¶ 18.  But Judge Carney "refused to address [Felgemacher's] concerns or provide an explanation for his exclusion." *Id*.

After he was excluded from a proceeding on September 25, 2024, Felgemacher "requested a transcript . . . to understand what [had] transpired [in] his absence." *Id*. at ¶ 19.  The transcript that he was given, however, was "incomplete, omitting substantive discussions that [Felgemacher's] attorney had referenced during their communications." *Id*.  Felgemacher's receipt of the incomplete transcript "further compounded [his] inability to proceed effectively in his custody case." *Id*. at ¶ 20.  And "[d]espite [Felgemacher's] attempts to bring these procedural failings to the attention of the court, including [through] formal and informal communications," the defendants never took any "corrective action . . . to remedy the[] deficiencies." *Id.* at ¶ 21.

Due to the defendants' actions, Felgemacher was unable to "[p]resent evidence or arguments in support of his position," "[c]ross-examine witnesses or respond to allegations made during the hearings," or "[a]dvocate for his parental rights in a meaningful way." *See id*. at ¶ 22.  Those deprivations mattered because "[t]he outcome of the proceedings had a significant and lasting impact on [his] familial relationships, emotional well-being, and legal rights." *Id*. at ¶ 12.  Felgemacher says that these "procedural deficiencies and [his] lack of access" led him to suffer "[e]motional distress," "[f]inancial losses," and "[p]ermanent damage to his relationship with his child." *See id.* at ¶ 35.

Felgemacher asserts that by depriving him access to his family court proceedings in this way, the defendants violated his right to procedural due process under the Fourteenth Amendment. *See id.* at ¶¶ 27-50. He seeks compensatory and punitive damages; a declaration that the defendants "violated [his Fourteenth Amendment] rights"; an injunction "requiring [the d]efendants to implement and maintain adequate administrative procedures and safeguards to ensure meaningful access to judicial proceedings, particularly for parties participating remotely"; and attorney's fees and costs. *Id.* at 11; *see also id.* at ¶¶ 37, 49.[3]

## LEGAL PRINCIPLES

Under Federal Rule of Civil Procedure 12(b), a case may be dismissed, among other reasons, for "lack of subject matter jurisdiction," "lack of personal jurisdiction," or for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), (2), (6).

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("'[F]ederal courts are

---

[3] As the defendants point out in their reply, Docket Item 7 at 3, Felgemacher says that he is suing Carney and Castiglione only in their "official capacities," *see* Docket Item 1 at ¶ 31. But given that he seeks both prospective relief and damages, *id.* at 11, and because courts are obliged to "construe [pro se] complaint[s] liberally," *Harris*, 572 F.3d at 72, this Court construes the complaint as suing Carney and Castiglione in both their official and individual capacities.

courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978))). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* And "[a]lthough courts hold pro se complaints 'to less stringent standards than formal pleadings drafted by lawyers,' pro se litigants [still] must establish subject matter jurisdiction." *Panchitkhaew v. Long Island Jewish Med. Ctr.*, 2019 WL 1492780, at \*2 (E.D.N.Y. Apr. 4, 2019) (italics omitted) (quoting *Hughes v. Rowe*, 449 US. 5, 9 (1980)).

A case may be dismissed for lack of personal jurisdiction due to insufficient service of process under Rule 12(b)(2). *See Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) (explaining that "while Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are closely interrelated" (citation and internal quotation marks omitted)). Federal Rule of Civil Procedure 4 governs how process must be served. As relevant here, Rule 4(c) requires that service be made by "[a]ny person who is at least 18 years old and not a party," while Rule 4(m) mandates that the defendant be served "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(c), (m). When a defendant challenges the sufficiency of service of process, "the burden of proof is on the plaintiff to show the adequacy of service." *Blue Ocean Lines v. Universal Process Equip., Inc.*, 1993 WL 403961, at \*4 (S.D.N.Y. Oct. 7, 1993).

Finally, a case may be dismissed for failure to state a claim under Rule 12(b)(6) if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

5

*Atl. Corp. V. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

The defendants say that Felgemacher's complaint should be dismissed for three reasons.  First, they say that that the Court lacks personal jurisdiction over them because Felgemacher did not properly serve them.  Docket Item 2-1 at 4-6.  Second, they say that the Court lacks subject matter jurisdiction over Felgemacher's claims against the New York State Unified Court System due to sovereign immunity.  *Id.* at 8-9. And finally, they say that absolute judicial immunity bars Felgemacher's claims against Carney and Castiglione.  *Id.* at 5-6.  The Court will examine each in turn.

## I.    **PERSONAL JURISDICTION**

The defendants first contend that this Court lacks personal jurisdiction over them because Felgemacher himself served process on Carney and Castiglione in violation of Rule 4(c)(2).[4]  Docket Item 2-1 at 5; *see* Docket Items 2-3 and 2-4 (showing that

---

[4] In the memorandum of law in support of their motion to dismiss, the defendants say that Felgemacher "failed to serve" the New York State Unified Court System entirely, *see* Docket Item 2-1 at 6, and the docket does not reflect any service upon that defendant.  The Court therefore presumes that Felgemacher did not serve the New York State Unified Court System or that if he did, he served it himself.

Felgemacher personally served process on Carney and Castiglione).  Felgemacher does not dispute that he served the defendants himself, *see generally* Docket Item 6, and the executed summonses submitted by the defendants show that Felgemacher did just that, *see* Docket Items 2-3 and 2-4.[5]  Moreover, because Felgemacher filed the complaint on February 10, 2025, Docket Item 1, his 90-day window to serve the defendants has expired, *see* Fed. R. Civ. P. Rule 4(m).  This Court therefore lacks personal jurisdiction over the defendants because they were not properly served.  *See Fantozzi*, 343 F.R.D. at 25.

In general, courts will afford pro se plaintiffs who erroneously serve process themselves an opportunity to "perfect service."  *See Kennedy v. Peters*, 2023 WL 5977237, at *3 (N.D.N.Y. Sept. 14, 2023) (granting pro se plaintiff an additional sixty days to effect service after plaintiff erroneously served own process); *Duan v. U.S. Citizenship & Immigr. Servs.*, 2022 WL 2526896, at *1 (E.D.N.Y. July 6, 2022) (granting an additional 45 days under similar facts).  But courts will not afford plaintiffs an opportunity to correct inadequate service when such an exercise would be futile.  *See Black v. Vitello*, 841 F. App'x 334, 336 (2d Cir. 2021) (summary order) (holding that district court did not err in dismissing case with prejudice because in addition to plaintiff's failure to timely serve defendants, there was no set of facts that would support her claims).  Courts "may dismiss a case with prejudice where '[t]he problem with [the plaintiff's] causes of action is substantive' and 'better pleading will not cure it.'"  *Id.* (alterations in original) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d. Cir. 2000)).

---

[5] Felgemacher never filed the executed summonses on the docket.  Rather, they were introduced by the defendants as exhibits in support of their motion to dismiss.  *See* Docket Items 2-3 and 2-4.

And for the reasons explained below, it is "beyond doubt that [Felgemacher] can prove no set of facts in support of [his] claim which would entitle [him] to relief." *See id.* (quoting *Lerman v. Bd. of Elections*, 232 F.3d 135, 140 (2d Cir. 2000)). The Court therefore dismisses the action without leave to amend rather than afford Felgemacher an extension of time to properly serve the defendants.

## II.    SOVEREIGN IMMUNITY

The defendants argue that Felgemacher's claims against the New York Unified Court System must be dismissed based on sovereign immunity. Docket Item 2-1 at 8-9. This Court agrees.

"The Eleventh Amendment precludes suits against a state unless the state expressly waives its immunity or Congress abrogates that immunity." *Thomas v. Martin-Gibbons*, 857 Fed. App'x 36, 37 (2d Cir. May 24, 2021) (summary order). That immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are . . . arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). If a defendant is protected by sovereign immunity, the claim "must be dismissed [under] the Eleventh Amendment for lack of subject matter jurisdiction." *Morales v. New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014).

Here, the New York Unified Court System is an "arm of the [s]tate . . . and is therefore protected by Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Because New York has not waived its section 1983 immunity, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977), and because Congress has not abrogated it, *see Dube v. State Univ. of*

8

*N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), the New York Unified Court System is immune from suit, *see Gollomp*, 568 F.3d at 366.

In his response, Felgemacher says that there are exceptions to sovereign immunity, and he argues that his claims fall within those exceptions. *See* Docket Item 6 at 1-6. More specifically, he notes that sovereign immunity does not apply when a plaintiff asserts claims under certain statutes—such as the Federal Tort Claims Act and statutes barring discrimination—or when a state or local official acts in a way that violates the Constitution or federal law.[6] *See id.* at 2, 5-6.

This Court agrees with the defendants that those exceptions are inapposite. *See* Docket Item 7 at 2-3. As an initial matter, it is true that Congress has abrogated state sovereign immunity to allow for damage suits in certain contexts. *See, e.g.*, 42 U.S.C. § 2000d-7(a)(1) (providing that states are not immune from suit in federal court for violating "section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other [f]ederal statute prohibiting discrimination by recipients of [f]ederal financial assistance"). But Felgemacher has not sued under those statutes, instead asserting claims under section 1983. *See* Docket Item 1 at ¶ 1. And as discussed above, Congress has not abrogated sovereign immunity for section 1983 claims, nor has New York waived it. *See Trotman*, 557 F.2d at 38-40; *Dube*, 900 F.2d at 594.

---

[6] Felgemacher also refers to various instances in which state courts have allowed suits to proceed against states or state entities. *See* Docket Item 6 at 3-5. But such cases have little relevance to whether states are immune from suit in federal court under the circumstances here.

Of course—as Felgemacher suggests—that does not mean that state and local officials can never be sued under section 1983, which would effectively render the statute a nullity.  State and local officials may be sued under section 1983 in their official capacities for prospective relief (that is, injunctive or declaratory relief), *see Ex parte Young*, 209 U.S. 123 (1908), or in their individual capacities for retrospective relief (that is, damages), *see Hafer v. Melo*, 502 U.S. 21, 27-31 (1991).[7]  And the Court addresses Felgemacher's claims against the individual judicial defendants below.  But because the New York Unified Court System is an "arm" of the state and not a state official, it clearly is immune from Felgemacher's section 1983 claims.  *See Gollomp*, 568 F.3d at 366; *Barone v. Lawyers' Fund for Client Prot.*, 2023 WL 1975783, at *2 (2d Cir. Feb. 14, 2023) (summary order).

Felgemacher's claims against the New York Unified Court System therefore are dismissed without prejudice for lack of subject matter jurisdiction.

## III.    JUDICIAL IMMUNITY

Finally, the defendants say that judicial immunity bars Felgemacher's claims against Carney and Castiglione.  Docket Item 2-1 at 6-7.  Again, this Court agrees.

### A.    Claim for Damages

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  Judicial immunity is not simply immunity from damages, however; it is immunity

---

[7] Felgemacher refers to this principle as the "stripping doctrine."  Docket Item 6 at 6 (stating that "[t]he 'stripping doctrine' permits a state official who used his or her position to act illegally to be sued in his or her individual capacity").

from suit altogether. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). This is to ensure
"that a judicial officer, in exercising the authority vested in [that judge], shall be free to
act upon [the judge's] own convictions, without apprehension of personal
consequences." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). Judicial immunity
therefore does not give way even to "allegations of bad faith or malice." *Mireles*, 502
U.S. at 11.

This protection extends to court referees such as Castiglione. *See Cleavinger v.
Saxner*, 474 U.S. 193, 200 (1985) (noting that absolute judicial immunity "has [been]
extended . . . to certain others who perform functions closely associated with the judicial
process"). "The law is clear that court referees are entitled to absolute judicial immunity
from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*,
389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (collecting cases); *see also Salis v. Dopico*,
2025 WL 880407, at *1-2 (2d Cir. Mar. 21, 2025) (summary order) (holding that district
court properly dismissed claims against court referee in his individual capacity based on
quasi-judicial immunity).

Judicial "immunity is overcome in only two sets of circumstances." *Mireles*, 502
U.S. at 11. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions
not taken in the judge's judicial capacity." *Id.* (italics omitted). "Second, a judge is not
immune for actions, though judicial in nature, taken in the complete absence of all
jurisdiction." *Id.* at 12.

Neither circumstance applies here. Felgemacher explicitly says that his rights
were violated by Carney and Castiglione during a custody case to which both were
assigned: Carney as the presiding judge and Castiglione as the court referee. *See*

11

Docket Item 1 at ¶¶ 7-8.  Indeed, Felgemacher alleges that the defendants "[f]ail[ed] to ensure [his] access to virtual court proceedings"; "[p]roceed[ed] with hearings in [his] absence [and] without making reasonable efforts to [include him]"; "[r]efus[ed] to remedy [his] exclusion"; and "[p]rovid[ed him] with incomplete and inaccurate transcripts."  *See id.* at ¶ 32.  All those actions are judicial acts taken by Carney and Castiglione in connection with their roles as judge and referee.  *See Bliven*, 579 F.3d at 210.  Because "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature," *id.*, the acts about which Felgemacher complains are judicial acts subject to absolute judicial immunity.

Moreover, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."  *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  As the Supreme Court has explained, there is a difference between a judge who acts in "excess of jurisdiction" and one who acts in "the clear absence of all jurisdiction over the subject[ ]matter."  *Id.* at 356-57, 356 n.6 (quoting *Bradley*, 435 U.S. at 351).  Only in the latter situation is the judge "deprived of [judicial] immunity."  *Id.* at 356-57.  In *Stump*, the Court provided an example to illustrate this point:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7 (citing *Bradley*, 435 U.S. at 352).

Felgemacher has alleged no facts suggesting that the defendants acted "in the complete absence of all jurisdiction."  *See Mireles*, 502 U.S. at 12.  On the contrary, he says that his rights were violated during proceedings in a custody case to which Carney

and Castiglione were assigned, over which Carney presided, and in which Castiglione

acted as the court referee.  *See* Docket Item 1 at ¶¶ 7-8.  And because New York State

family courts have "exclusive original jurisdiction over . . . proceedings [related to]

custody of a child," N.Y. Fam. Ct. Act § 115(a)(4), the acts about which Felgemacher

complains were precisely within the defendants' jurisdiction.

    **B.**    **Claim for Injunctive and Declaratory Relief**

       As already noted, in addition to his damages request, Felgemacher seeks

injunctive and declaratory relief.  *See* Docket Item 1 at 11; *see also id.* at ¶¶ 37, 49.

More specifically, he seeks a declaration that the "[d]efendants . . . violated [his] rights

under the Fourteenth Amendment . . . by depriving [him] of procedural due process."

*See id.* at 11.  And he requests an injunction "requiring [the d]efendants to implement

and maintain adequate administrative procedures and safeguards to ensure meaningful

access to judicial proceedings, particularly for parties participating remotely."  *Id.*

       Those claims also fail.  As an initial matter, to the extent Felgemacher seeks a

declaratory judgment that Carney and Castiglione violated his rights, such relief is

barred by the Eleventh Amendment.  *See P.R. Aqueduct and Sewer Auth. v. Metcalf &*

*Eddy, Inc.*, 506 U.S. 139, 146 (1993) (stating that Eleventh Amendment "does not

permit judgments against state officers declaring that they violated federal law in the

past"); *Dorlette v. Tyburski*, 2018 WL 279978, at *2-3 (D. Conn. Jan. 2, 2018) (holding

that Eleventh Amendment barred plaintiff's claim for declaratory relief that defendants

"violated [his] constitutional rights in the past").

       Further, while the judicial immunity discussed above applies only to claims

against judges for money damages, "statutory judicial immunity" bars claims for

injunctive relief against judges for acts taken in their judicial capacity unless the plaintiff alleges that "'a declaratory decree was violated' or that 'declaratory relief was unavailable.'" *McCluskey v. N.Y. State Unified Ct. Sys.*, 442 F. App'x 586, 588 (2d Cir. 2011) (summary order) (quoting 42 U.S.C. § 1983).  The roots of statutory judicial immunity lie in *Pulliam v. Allen*, 466 U.S. 522 (1984), where the Supreme Court held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."  *Id.* at 541-42.  Congress then amended section 1983 to bar the granting of injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983; *see Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Felgemacher has not alleged that the defendants violated "a declaratory decree" nor has he alleged that declaratory relief was unavailable.  *See generally* Docket Item 1; *Feng Li v. Rabner*, 643 F. App'x 57, 59 (2d Cir. 2016) (summary order) (holding that district court "properly dismissed" plaintiff's claims for injunctive relief where he had "not allege[d] that the defendants violated a declaratory decree or that this relief was unavailable").  Thus, section 1983 bars his claims for injunctive relief.[8]  *See McCluskey*, 442 F. App'x at 588; *Jacobs v. Ali*, 2021 WL 12147769, at *5 (E.D.N.Y. June 22, 2021)

---

[8] In addition, aside from judicial immunity, he has not pleaded facts establishing his standing to seek injunctive relief.  *See generally* Docket Item 1; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (holding that for a plaintiff to have standing to obtain prospective relief, he must establish "a sufficient likelihood that he will again be wronged in a similar way").  Felgemacher has not provided any facts establishing a likelihood of future harm stemming from being denied proper access in court proceeding; in fact, the custody case about which he complains has ended.  *See* Docket Item 1 at ¶ 23.  His claims for injunctive relief therefore also are barred for lack of standing.  *See Lyons*, 461 U.S. at 111.

(dismissing claims for injunctive relief against judge under section 1983 because plaintiff had not pleaded any "facts indicating that . . . declaratory relief w[as] unavailable to him" and noting that plaintiff "could have filed a declaratory action in New York state court [under] N.Y. C.P.L.R. § 3001 or an Article 78 action").

For these reasons, Felgemacher has failed to state a claim against Carney or Castiglione.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss, Docket Item 2, is GRANTED.  Because this Court lacks subject matter jurisdiction over Felgemacher's claims against the New York State Unified Court System and his claims for declaratory relief, it dismisses those claims without prejudice; Felgemacher's remaining claims are dismissed with prejudice.  *See Black*, 841 F. App'x at 336.  Felgemacher's motion for electronic filing privileges, Docket Item 5, is DENIED without prejudice as moot.  The Clerk of the Court shall close this case.


SO ORDERED.

Dated:   August 6, 2025
         Buffalo, New York


      */s/ Lawrence J. Vilardo*
      LAWRENCE J. VILARDO
      UNITED STATES DISTRICT JUDGE